UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>   vs.<br><br>JESSE A. BRUCE,<br><br>                Defendant. | CR. 15-50153-JLV<br><br><br>ORDER |

**INTRODUCTION**

A grand jury indicted Jesse Bruce for conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(B) and possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). (Docket 1). Mr. Bruce filed a motion "to suppress all evidence seized by law enforcement from him and his vehicle and to suppress statements . . . ." (Docket 24).

The motion to suppress was referred to United States Magistrate Judge Daneta Wollmann pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of March 9, 2015. An evidentiary hearing was held on May 25, 2016. (Docket 45). Magistrate Judge Wollmann issued a report and recommendation ("R&R") on defendant's motion to suppress. (Docket 67). The magistrate judge recommended defendant's motion to suppress physical evidence be denied, to suppress statements Mr. Bruce made in the field be denied and to suppress statements once he was in custody be denied as moot. Id. at p. 18. The

defendant timely filed his objections to the report and recommendation. (Docket 68).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. See also Fed. R. Crim. P. 59(b)(3).

The court completed a *de novo* review of those portions of the R&R to which objections were filed. For the reasons stated below, the court finds the magistrate judge's report and recommendation is an appropriate application of the law to the facts presented by the parties at the suppression hearing. For the reasons stated below, the defendant's objections are overruled and the report and recommendation of the magistrate judge is adopted in its entirety.

**FACTUAL OBJECTIONS**

Defendant objects to facts found by the magistrate judge is as follows:

1. Mr. Bruce's vehicle did not have a functional driver's side rear brake light and did not have a functional rear license plate light;

2. Mr. Bruce did not show proof of valid insurance for the vehicle;

3. Mr. Bruce had a prior citation for no insurance on a vehicle;

4. Mr. Bruce could not provide proof of a history of insurance on the vehicle;

2

5. Mr. Bruce was cited for no proof of insurance and issued two warning tickets for the two separate light violations;

6. Officer Sayles had previously cited Mr. Bruce for no proof of insurance on his vehicle;

7. Mr. Bruce was asked to provide a blood or urine sample;

8. Mr. Bruce possessed a slim jim at the time of the traffic stop;

9. The police officers conducted an inventory search of Mr. Bruce's vehicle; and

10. Mr. Bruce did not have a concealed weapon permit.

(Docket 68 at pp. 2-3).

## **LEGAL CONCLUSIONS**

The defendant's objections to the magistrate judge's legal conclusions are summarized as follows:

1. There was no probable cause to stop Mr. Bruce's vehicle;

2. The stop was illegally expanded to conduct an inventory search;

3. Mr. Bruce was subject to a custodial interrogation without being advised of his Miranda[1] rights;

4. Mr. Bruce did not waive his Miranda rights; and

5. All evidence seized was seized illegally.

(Docket 68 at pp. 6-12).

Each of defendant's objections will be separately addressed in categories which make sense chronologically with the evidence presented at the suppression hearing.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

**ANALYSIS**

The court completed a *de novo* review of the transcript of the suppression hearing and the video and audio recording ("video recording") produced by Rapid City Police Officer Sayle's patrol car in-dash camera. (Docket 54 and suppression hearing Exhibit 1). Unless otherwise indicated, the court's findings of fact are consistent with the findings made by the magistrate judge.

PROBABLE CAUSE FOR STOP

At 1:44 a.m. on May 5, 2015, Officer Brendan McMillan of the Rapid City Police Department ("RCPD"), accompanied by his field training officer Chad Sayles, observed a multi-colored 1990 Acura with one functioning rear light and no license plate light driving eastbound on E. Highway 44 in Rapid City, South Dakota.[2] (Docket 67 at p. 2). The patrol car's video, which began recording one minute before the patrol car's emergency lights were activated, does not accurately depict the two lighting violations because the patrol car's lights were reflecting off the Acura. Id. at p. 2 n.1. As the traffic stop was initiated the Acura used its right turn signal to indicate its intent to turn off the highway. (Suppression Exhibit 1 at 1:43[3]). As the Acura stopped, the right turn signal

---

[2]SDCL § 32–17–8 requires that every automobile must "be equipped with at least two tail lamps mounted on the rear, which when lighted . . . shall emit a red light plainly visible from a distance of one thousand feet to the rear. . . . A violation of this section is a petty offense." SDCL § 32-17-11 requires that a lamp must "illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear. . . . A violation of this section is a petty offense").

[3]When referencing the video, Exhibit 1, the court will cite to the media time reflected in the CD as the hour and minutes, without referencing seconds.

and right brake light appeared to be working properly and there was no light coming from the rear left brake light.  Id.   When Officer McMillan approached the passenger side of the vehicle he immediately announced the reason for the stop was the non-functional rear left light and the lack of a license plate light. Id. at 1:44.

Defendant's argument the Acura had two functional rear lights and a functional license plate light is not supported by the video.   (Docket 68 at p. 6). The Acura did not have a third rear light in the top center of the rear window. See Exhibit 1 at l:43.   The light which appeared in the top center of the rear window is caused by the reflection of the patrol car's headlights on the Acura rear view mirror.   Id. at 1:43-44.

The magistrate judge heard the testimony from Officers McMillan and Sayles.   (Docket 67 at pp. 7-8).   The magistrate judge found their testimony credible that the Acura did not have two working rear lights and an illuminated rear license plate.   Id. at p. 8.   The magistrate judge is entitled to make observations and judgments about witness credibility.   "A credibility finding made by a magistrate judge 'after a hearing on the merits of a motion to suppress is virtually unassailable on appeal.' "   United States v. Shafer, 608 F.3d 1056, 1065 (8th Cir. 2010) (quoting United States v. Starr, 533 F.3d 985, 995 (8th Cir. 2008) (quoting United States v. Frencher, 503 F.3d 701, 701 (8th Cir. 2007)). The magistrate judge considered the officers' testimony along with the content of the video recording.   Following a *de novo* review of the hearing transcript and

5

the video recording, the court concludes the magistrate judge properly weighed the credibility of the officers' testimony.

"[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." United States v. Adler, 590 F.3d 581, 583 (8th Cir. 2009) (citing Whren v. United States, 517 U.S. 806, 810 (1996)). "Any traffic violation, however minor, provides probable cause for a traffic stop." Id. (internal citations omitted). The magistrate judge's conclusion that the officers had probable cause to stop Mr. Bruce's vehicle is supported by the evidence. (Docket 67 at p. 8). Defendant's factual objection #1 and first legal objection to the report and recommendation are overruled.

VEHICLE IMPOUNDMENT

Mr. Bruce acknowledged he did not have proof of insurance for his vehicle with him, although he stated he did have insurance. (Exhibit 1 at 1:45). Mr. Bruce argues that his failure to have proof of insurance in the vehicle cannot justify the decision to impound and tow his vehicle. (Docket 68 at p. 2). Mr. Bruce acknowledges that when the officers ran the RCPD dispatcher check of his record, it disclosed a previous citation for no proof of insurance. Id. He argues the prior citation "was for a different vehicle with a different owner and was dismissed." Id. He also asserts he could not have a history of proof of insurance for the Acura because he had only "owned the vehicle for two weeks . . . ." Id.

6

South Dakota law requires every owner or driver of a vehicle to maintain a form of financial responsibility. SDCL § 32-35-113. A citation may be issued if the driver or owner fails to provide evidence of financial responsibility. SDCL § 32-35-116. A policy of impounding vehicles without proof of financial responsibility to eliminate the risk of financial harm to other drivers in the event of an accident conforms with the Fourth Amendment. Cady v. Dombrowski, 413 U.S. 433, 441 (1973).

Mr. Bruce claims his vehicle was insured. (Docket 68 at p. 2). This assertion is without merit as Mr. Bruce acknowledged to Officer McMillan he did not have proof of insurance with him or in the car. (Exhibit 1 at 1:45). The officers were authorized to impound the Acura. Cady, supra. Whether this was Mr. Bruce's first failure to provide proof of insurance or his second or third violation does not change the basic rule that an uninsured vehicle may be impounded.

The magistrate judge's conclusion the officers were authorized to impound the Acura is supported by the evidence and justified under the statutes and case authority cited in the report and recommendation. (Docket 68 at pp. 8-9). Defendant's factual objections #2, #3, #4 and #6 and that portion of the second legal objection related to the appropriateness of the impound of the Acura are overruled.

CITATIONS FOR VEHICLE VIOLATIONS

As indicated above, the police officers stopped Mr. Bruce's vehicle for two state law vehicle infractions. (Exhibit 1 at 1:43-44; Docket 67 at pp. 3-4). Officer McMillan processed those violations through the RCPD computer system. (Docket 67 at p. 4). During the course of the traffic stop investigation, the officers recovered two firearms from Mr. Bruce's vehicle. (Docket 67 at p. 5). The magistrate judge determined Mr. Bruce received a citation for no proof of insurance and warning tickets for the two light violations. Id. at p. 3.

Mr. Bruce objects to the findings of the magistrate judge. (Docket 68 at p. 3). He asserts the government failed to produce copies of the citation or warning tickets at the suppression hearing. Id. Officer Sayles testified there should have been a citation and warning tickets issued to Mr. Bruce. (Docket 54 at pp. 65:12-16 & 67:18-23). Officer Sayles testified that while he was confident the documents were being printed on the patrol car's on-board computer system, the documents may have been voided and discarded. Id. at p. 67:20-23. The court finds the police officers did not complete the process of issuing the citation and warning tickets and giving copies to Mr. Bruce. The report and recommendation is amended to reflect the court's finding.

Mr. Bruce assigns no particular constitutional challenge to the fact he did not receive copies of the citation and warning tickets. (Docket 68). The court determined probable cause for the traffic stop existed. As the investigation continued, it became clear Mr. Bruce was going to be arrested for criminal

8

offenses far more serious than the vehicle violations. The magistrate judge found the testimony of Officer Sayles credible. The court concludes the testimony of Officer Sayles makes sense and is reasonable under the circumstances of Mr. Bruce's arrest. Whether the citation and warning ticket were actually issued and delivered to Mr. Bruce does not impact the other findings by the magistrate judge or the court.

Defendant's objections to the report and recommendation in his factual objection #5 and that portion of the second legal objection related to the citation and warning tickets are overruled.

INVENTORY OF THE VEHICLE

Mr. Bruce objects to the report and recommendation because the inventory prepared by the officers who searched Mr. Bruce's vehicle "was very vague and listed miscellaneous items omitting to mention many contents of [the] vehicle." (Docket 68 at p. 3). He argues the government failed to produce any "evidence concerning department policy related to investigative/inventory searches." Id. at p. 7. Based on his assertion there is no policy, Mr. Bruce contends "the 'inventory search' was actually and solely investigatory." Id. Mr. Bruce argues "[t]he vehicle was thoroughly searched, but not thoroughly inventoried." Id.

The court concluded the officers properly impounded Mr. Bruce's vehicle. The officers legally conducted an inventory of the vehicle's contents. See South Dakota v. Opperman, 428 U.S. 364, 369 (1976). The magistrate judge found an

9

inventory search must meet three specific interests: "[1] protection of the owner's property while it remains in police custody; [2] claims or disputes over lost or stolen property; . . . and [3] protection of the police from danger." (Docket 67 at p. 9) (internal citations omitted).

Mr. Bruce acknowledges an impounded vehicle must be inventoried. (Docket 68 at pp. 7-8). He argues the search of his vehicle was not valid because the officers' inventory was not "a detailed, itemized inventory." Id. at p. 8 (referencing United States v. Taylor, 636 F.3d 461 (8th Cir. 2011)). Mr. Bruce contends that because the officers simply noted the vehicle contained " 'misc. tools' without any effort to identify the tools or even take photos of the tools" converts the officers' activities into a "criminal investigation and not a caretaking function." Id.

The magistrate judge found "[r]outine practices of securing inventory were followed. . . . Law enforcement completed a thorough written vehicle inventory as shown by Exhibit 3." (Docket 67 at p. 10) (referencing Docket 54 at pp. 20-22, 65 & 69). Officers McMillan and Sayles testified the Rapid City Police Department had a standard policy which required an inventory of any impounded vehicle. (Docket 54 at pp. 20:15-19, 65:19-21, 68:6-8). To the extent the court's findings are at variance with the magistrate judge's findings on this issue, the report and recommendation is amended consistent with this order.

Mr. Bruce asserts he is "a handyman." (Docket 68 at p. 8). Yet he fails to identify how the inventory which identified "miscellaneous tools" and "lots of miscellaneous tools" in his vehicle was defective. See Exhibit 3. In Taylor, the court found:

> At the time of the inventory search, Taylor, a handyman, had two toolboxes that each contained over a hundred items, including pliers, wrenches, screwdrivers, and drill bits. He also had two additional toolboxes, several chains, a hydraulic jack, a crate, lug wrenches, a paint roller, a flashlight, a shingle remover, a band clamp, an electric chainsaw, and an electric circular saw, among other things. Given the hundreds of valuable tools in Taylor's truck, Officer Gillespie's description of "misc. tools" does not constitute a detailed, itemized inventory.

Taylor, 636 F.3d at 464. The facts presented at the suppression hearing are different from the facts developed in Taylor. Mr. Bruce's objection to the level of detail in the inventory is without merit. The search of his vehicle was "not a pretext for an investigatory search." Id. at 465.

Defendant's objections to the report and recommendation in factual objection #9 and his second legal objection are overruled.

POSSESSION OF A SLIM JIM

Mr. Bruce acknowledges that during the Terry[4] pat down of his person, law enforcement discovered a slim jim[5] in his pocket. (Docket 67 at p. 4; see

---

[4] Terry v. Ohio, 392 U.S. 1 (1968).

[5] "[A] 'slim jim' is a very thin piece of metal with a hook on the end of it, designed for the purpose of entering a vehicle that is locked. It is typically inserted between the window and the door frame of the vehicle to engage the lock mechanism on the inside of the door, allowing entry to the vehicle without a key." (Docket 67 at p. 4 n.4) (reference omitted).

11

also Exhibit 1 at 1:52-53). Officer McMillan testified a slim jim may constitute a burglary tool. Possession of a slim jim is an offense for which an individual could be arrested.[6] (Docket 54 at p. 16:7-13). Mr. Bruce told the officer he had the slim jim because his car keys were "lost somewhere inside the car." (Docket 68 at p. 3; see also Exhibit 1 at 1:53). Mr. Bruce was not arrested for that potential offense. (Docket 54 at p. 16:14-15). The report and recommendation notes this. (Docket 67 at p. 4). One of the officers told Mr. Bruce they would not charge him because they were not investigating a burglary. (Exhibit 1 at 2:31).

Mr. Bruce does not articulate how this matter is relevant to his objections to the report and recommendation. See Docket 68. Defendant's factual objection #8 is overruled.

FIREARMS IN VEHICLE

During the inventory of Mr. Bruce's vehicle, Officer Sayles found a Highpoint .45 caliber handgun. (Docket 67 at p. 5; see also Exhibit 1 at 2:16-2:18). Officer Sayles found this handgun under the driver's seat. (Docket 54 at p. 70:24-25). When the officer presented the firearm to Mr. Bruce he declared, "I didn't know it was there." (Exhibit 1 at 2:18 & 2:20). Later in the inventory, Officer Sayles found a second firearm, a Phoenix Arms .25 caliber

---

[6]Possession of an instrument designed to commit a burglary, with an intent to commit a burglary, is a felony offense under South Dakota law. See SDCL § 22-32-17.

12

handgun, between the driver's seat and the door. (Docket 54 at p. 71:1-5; see also Exhibit 1 at 2:34-2:36).

Officer McMillan asked Mr. Bruce if he had a concealed weapon permit for the firearms. (Docket 54 at p. 26:10-13). The officer testified that if Mr. Bruce had a concealed weapon permit, then it would not be a crime to possess the firearms. Id. at p. 26:15-17. Mr. Bruce told the officer he did not have a concealed weapon permit. Id. at p. 42:3-8.

Mr. Bruce objects to the magistrate judge's finding the firearms were found in his vehicle. (Docket 68 at p. 3) (referencing Docket 68 at p. 5). He asserts a "[c]oncealed permit is not required to own firearms." Id.

Subject only to restrictions not relevant to this case, a holder of a concealed weapon permit "may carry a concealed pistol anywhere in South Dakota . . . ." SDCL § 23-7-8.1. A concealed firearm is defined as "any firearm that is totally hidden from view. If any part of the firearm is capable of being seen, it is not concealed . . . ." SDCL § 22-1-2(6). By Officer Sayles' description of the locations where he found both firearms, Officer McMillan's question to Mr. Bruce was an appropriate investigative inquiry. The officer was "entitled to question [Mr. Bruce] about any required permits for the handguns." (Docket 67 at p. 16).

While Mr. Bruce's objection is legally accurate under the Second Amendment to the United States Constitution, it is an incomplete statement of the law in South Dakota. To carry a firearm in the manner described by Officer

13

Sayles, a concealed weapon permit is required under South Dakota law. Defendant's factual objection #10 is overruled.

BLOOD OR URINE SAMPLE

The magistrate judge found Mr. Bruce "was asked to provide a blood or urine sample, to which he refused." (Docket 67 at p. 4). Mr. Bruce objects to this finding by claiming he was "never asked for a sample during the stop." (Docket 68 at p. 3).

Mr. Bruce's objection is without merit. Officer McMillan testified he asked Mr. Bruce for his consent to obtain a urine sample. (Docket 54 at p. 44:16-19). The video confirms that after the scale found in Mr. Bruce's vehicle was tested and found presumptively positive for meth, Officer McMillan asked Mr. Bruce if he would consent to a urine test. (Exhibit 1 at 2:40). Mr. Bruce refused. Id. A search warrant was later obtained to secure a urine or blood sample from Mr. Bruce. (Docket 54 at p. 44: 18-19). Defendant's factual objection #7 is overruled.

MIRANDA

Mr. Bruce argues he was in custody from the very beginning of the officers' interaction with him at the stop and that all statements he made thereafter were obtained in violation of his Miranda rights. (Docket 68 at pp. 9-10).

The magistrate judge reviewed the law as to the point in time a motorist will be considered "in custody for purposes of Miranda." (Docket 67 at p. 12; see also id. at pp. 12-16). The magistrate judge properly found the officers were

14

conducting a traffic stop initially and so their questioning of Mr. Bruce "was reasonable." Id. at p. 16. The magistrate judge concluded the officers "had reasonable suspicion to expand their investigation" upon finding the weapons and scale. Placing Mr. Bruce in handcuffs at that point was done for officer safety while determining whether he was "involved in further criminal activity based on what [the officers] found." Id. at pp. 16-17. The magistrate judge found that after Mr. Bruce was handcuffed the "officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was reasonable to briefly detain Defendant." (Docket 67 at p. 17).

"Placing [Mr. Bruce] in handcuffs was a reasonable response to the situation in order to protect the officers' personal safety and to maintain the status quo. As such, the use of handcuffs did not convert this Terry stop into an arrest." United States v. Martinez, 462 F.3d 903, 907 (8th Cir. 2006). Mr. Bruce does not articulate what statements should be suppressed. (Docket 68 at pp. 9-10). The court is not required to do a frame-by-frame review of the video to determine if Mr. Bruce made any incriminating statements as the result of the officers' interrogation.

Mr. Bruce also objects to the magistrate judge's decision to deny the defendant's motion to suppress all post-arrest statements. (Dcket 68 at p. 11). The magistrate judge found the issue moot because the government "indicated

15

that it does not intend to introduce his post arrest statement in its case in chief." (Docket 67 at p. 17).

Mr. Bruce specifically addresses this challenge to any statements made by him to Investigator Ganser at the Pennington County Jail. (Docket 68 at p. 11). Mr. Bruce says he "has the right to testify at trial and thus his issue should have been addressed and the motion to suppress granted." Id.

"[A]s a practical matter, there does not appear to be a significant difference between granting the Motion or denying it as moot based on the government's representation that it will not offer the evidence during its case in chief." United States v. Mitchell, No. 08-CR-46, 2009 WL 36605, at *2 (N.D. Iowa Jan. 5, 2009). See also United States v. Lindsey, Criminal No. 10-15, 2010 WL 4822925, at *1 (D. Minn. Nov. 22, 2010), *aff'd in part*, 702 F.3d 1092 (8th Cir. 2013) ("Because the government had agreed not to use in its case in chief Lindsey's statements whose suppression the magistrate judge recommended, the Court denies as moot Lindsey's motion to suppress those statements.").

Mr. Bruce's desire to have the court complete a review of any post-arrest statements under Miranda when the government has agreed to not use any post-arrest statements in its case-in-chief is without merit. Mr. Bruce's third and fourth objections to the legal conclusions of the report and recommendation are overruled.

16

FRUIT OF THE POISONOUS TREE

Mr. Bruce's final objection to the report and recommendation is that "[a]ll evidence seized and searched, as well as any statements made by Mr. Bruce, were conducted and obtained illegally." (Docket 68 at p. 11). He claims all the evidence and all statements must be excluded under the fruit of the poisonous tree doctrine. Id. (referencing Wong Sun v. United States, 371 U.S. 471, 487-88 (1963) ("We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' ").

Mr. Bruce's objection is without merit. The court has not identified any "illegal actions of the police" so there can be no tainted evidence. Wong Sun, 317 U.S. at 488. Mr. Bruce's fifth objection to the report and recommendation is overruled.

**ORDER**

After conducting a *de novo* review of the entire record, it is

ORDERED that the defendant's objections (Docket 68) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 67) is adopted as modified by this order.

17

IT IS FURTHER ORDERED that the defendant's motion to suppress (Docket 24) is denied.

IT IS FURTHER ORDERED that the physical evidence gathered during the traffic stop, including but not limited to evidence gathered from Mr. Bruce's person and from the search of the automobile, is admissible at trial in the government's case-in-chief.

IT IS FURTHER ORDERED that the pre-arrest statements made by Mr. Bruce are admissible at trial in the government's case-in-chief.

IT IS FURTHER ORDERED that any post-arrest, non-biographical statements made by Mr. Bruce which were responsive to questions by law enforcement during the traffic stop are not admissible at trial in the government's case-in-chief but may be used for impeachment if Mr. Bruce testifies.

IT IS FURTHER ORDERED that any post-arrest, non-biographical statements made by Mr. Bruce which were responsive to questions by law enforcement at the Pennington County Jail are not admissible at trial in the government's case-in-chief. If the government intends to use any such statement for impeachment purposes, the voluntariness and admissibility of the statement must be resolved by the court out of the presence of the jury.

IT IS FURTHER ORDERED that a scheduling order will follow.

Dated January 17, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE